UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TROY TICEY and CYNTHIA TICEY,

Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION and DOES 1-30,

Defendants.

CASE NO. C22-1110 MJP

ORDER GRANTING MOTION TO DISMISS

This matter comes before the Court on the Motion to Dismiss filed by Defendant Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank (FDIC). (Dkt. No. 22.) Having reviewed the Motion, Plaintiffs' Response (Dkt. No. 23), the Reply (Dkt. No. 26), and Plaintiffs' Surreply (Dkt. No. 27), and all supporting materials, the Court GRANTS the Motion, DISMISSES the complaint and STRIKES the Surreply.

**BACKGROUND**

Plaintiffs acquired a home loan from Washington Mutual Bank in 2007, secured by a residence in Anaheim, California. (See Complaint ¶ 12.) Plaintiffs allege they were given false

assurances about the nature of the loan's interest rate by a branch manager and by various press releases and advertisements from Washington Mutual. (See id. ¶¶ 20-45.) Plaintiffs allege that they only recently became aware of the fact that they could not convert the loan from an adjustable to a fixed rate because this was only permitted within the first ten of thirty years of the loan's term. (See id. ¶ 46.) Plaintiffs allege that this inability to convert the rate of the loan has harmed their creditworthiness and they cannot refinance the loan. (See id. ¶¶ 46-50.)

Plaintiffs filed a claim with the FDIC in 2021, which the FDIC rejected. (Compl. ¶ 14.) Plaintiffs now pursue eight claims: (1) unfair and deceptive acts in violation of Section 5 of the Federal Trade Commission; (2) breach of contract; (3) unconscionability; (4) unjust enrichment; (5) violations of the Truth in Lending Act (TILA) by failing to provide loan disclosures; (6) undue influence; (7) slander of title; and (8) violation of California community property laws. (Id. ¶¶ 60-115.) The FDIC moves to dismiss all of the claims with prejudice and without leave to amend.

## ANALYSIS

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party and accept all well-pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). And although the Court construes liberally the allegations in a pro se complaint, the Court "may not supply essential elements of the claim that were not initially pled" and must still apply the Federal Rules of Civil Procedure. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)

**B. Federal Trade Commission Claim**

Plaintiffs' first cause of action seeks relief under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. (See Compl. ¶ 65.) But as the FDIC corrects notes, there is no private right of action under this section of the Act, and Plaintiffs cannot invoke it in an effort to seek relief. Dreisbach v. Murphy, 658 F.2d 720, 730 (9th Cir. 1981) (holding that "private litigants may not invoke the jurisdiction of the federal district courts by alleging that defendants engaged in business practices proscribed by s[ection] 5(a)(1)" of the Federal Trade Commission Act). Plaintiffs offer no substantive response on this issue. The Court GRANTS the Motion as to this claim and DISMISSES it WITH PREJUDICE because it cannot be saved through amendment.

In their response, Plaintiffs suggest that this should be construed as a claim of fraud. The Court sees not such claim alleged. Even if the Court construed it as a claim for fraud, it finds that Plaintiffs have failed to satisfy Federal Rule of Civil Procedure 9(b), which requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) (noting that "Rule 9(b)'s particularity requirement applies to state-law causes of action"). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."

Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original and citation and quotation omitted). As currently drafted, the Complaint fails to allege a claim for fraud in any form that might satisfy this exacting standard. To the extent Plaintiffs choose to amend and expressly add a claim of fraud, they will need to satisfy Rule 9(b) and set forth sufficient facts to show why the claim is not time barred.

**C. Breach of Contract**

The FDIC seeks dismissal of Plaintiffs' breach of contract claim on the theory that it is inadequately pleaded and untimely. The Court reviews the applicable law before examining the fatal flaws in this claim.

**1. Nevada law applies**

The FDIC asks the Court to apply Nevada law to Plaintiffs' breach of contract claim on the theory that the Loan Agreement specifies that Nevada law applies. The Court agrees.

To determine what law applies to Plaintiffs' state law claims, the Court uses the law of the forum state—Washington. See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp., 96 F.3d 1151, 1164 (9th Cir. 1996). Washington law dictates that a contractual choice-of-law provision will generally be enforced. See McKee v. AT&T Corp., 164 Wn.2d 372, 384 (2008). Under Washington law, the Court will "disregard the contract provision and apply Washington law if, without the provision, Washington law would apply; if the chosen state's law violates a fundamental public policy of Washington; and if Washington's interest in the determination of the issue materially outweighs the chosen state's interest." Id. (citation omitted).

Consistent with the Loan Agreement's choice-of-law provision, the Court finds that Nevada law applies to Plaintiffs' breach of contract claim. The Loan Agreement states: "This Agreement and your Credit Line will be governed by and interpreted in accordance with the laws

of the United States of America and, to the extent that such laws are not applicable, with the internal laws of the State of Nevada (without giving effect to any choice of law rule that would cause the application of the laws of any other jurisdiction to the rights and duties of the parties." (Loan Agreement § V (Dkt. No. 1-10 at 4).) Plaintiffs have identified no basis why this provision should not be enforced, arguing instead that California has a greater connection to this action. But California's choice-of-law rules do not apply to the analysis of whether the contractual provision applies—Washington's does. See Paracor, 96 F.3d at 1164. And Plaintiffs offer no reason why the contractual provision specifying Nevada law's application should be disregarded under Washington law. The Court rejects Plaintiffs' argument and applies Nevada law.

Plaintiffs also rely on the choice of law provision in the Deed of Trust to argue that California law should apply. While the Deed of Trust states that California law governs that agreement, it does not apply to the breach of contract claim because the breach of contract claim arises out of and turns on the provision in the Loan Agreement concerning conversion from a variable to a fixed rate. Indeed, the Deed of Trust expressly refers the reader to the Loan Agreement as the source of all terms concerning the variable or fixed rate of the loan. (Deed of Trust § 2 (Dkt. No. 1-13 at 3).) And Plaintiffs cite to no provision in the Deed of Trust that might support their claims. So the Deed of Trust's specification for California law remains inapplicable to the claims here which turn on the Loan Agreement. (See id. § 13 (Dkt. No. 1-13 at 6).)

**2. Complaint fails to state a claim**

"Under Nevada law, the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citation and quotation omitted). Contract interpretation is a question of law. Am. First Fed. Credit Union v.

Soro, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015). The Court looks objectively at the terms of the contract, and if they are "clear and unambiguous . . . the contract will be enforced as written." Id. (citation and quotation omitted). Extrinsic evidence—information outside of a contract— "is admissible for . . . ascertaining the true intentions and agreement of the parties when the written instrument is ambiguous." M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs., Ltd., 124 Nev. 901, 914, 193 P.3d 536, 545 (2008). But "extrinsic evidence is not admissible to add to, subtract from, vary, or contradict . . . written instruments which dispose of property, or are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake. Id at 913-14 (citation and quotation omitted).

Applying the clear and unambiguous terms of the Loan Agreement, the Court finds that the provisions concerning the limited duration of the conversion from a variable to fixed interest rate were clearly disclosed. The Loan Agreement states in a section entitled "FIXED RATE LOAN OPTION," that "The Fixed Rate Loan Option may be exercised only during the Draw Period." (Loan Agreement § VII(2)(a) (Dkt. No. 1-10 at 8).) The Loan Agreement identifies the "Draw Period" on the very first page as 120 months, or 10 years. (Id. § I (Dkt. No. 1-10 at 2).) The Court finds no ambiguity in this provision—it clearly limited Plaintiffs' ability to convert the variable rate to fixed rate after 10 years. Plaintiffs' breach of contract claim therefore fails because they have not alleged any facts that would demonstrate a violation of this term of the Loan Agreement.

In response to the Motion, Plaintiffs argue that their breach of contract claim is based on the notion that the "contract is composed by the terms stated in the press releases" that are cited in the Complaint. (Resp. at 17 (Dkt. No. 23).) Plaintiffs' argument lacks any merit. First, Plaintiffs have not identified any provision in the Loan Agreement that would allow for

incorporation of statements made outside of the Agreement. Second, Plaintiffs fail to identify any ambiguity in the Loan Agreement concerning the variable rate conversion that might allow for considering of extrinsic evidence. See M.C. Multi-Fam., 124 Nev. at 914. As such, the statements Plaintiffs identify outside of the Loan Agreement do not amend it or provide for a basis on which to assert a breach of contract claim. The Court rejects Plaintiffs' theory.

The Court GRANTS the Motion as to this claim and DISMISSES it.

**3. Breach of contract claim is untimely**

The FDIC correctly argues that the breach of contract claim suffers from an additional flaw—it is untimely.

Nevada law requires breach of contract claims to be brought within six years of the breach. Nev. Rev. Stat. § 11.190(1). "The general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought." Petersen v. Bruen, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990). Nevada law recognizes an exception under the "discovery rule," which tolls the statute of limitations "until the injured party discovers or reasonably should have discovered facts supporting a cause of action." Id.

Here, Plaintiffs bring their breach of contract claim far more than six years after they signed the Loan Agreement which clearly spelled out the limitation on conversions from a variable to a fixed rate. Plaintiffs identify no reason why they could not have identified this feature of the Loan Agreement within the statute of limitations. And while Plaintiffs allege they only discovered this feature in 2021, they provide no reason why they could not have discovered this provision earlier with diligence. The Court GRANTS the Motion and DISMISSES this claim WITH PREJUDICE because it is time-barred.

**D. Unconscionability**

The Court agrees with the FDIC that Plaintiffs' "unconscionability" claim is not actionable and not a means of seeking restitution.

Under Nevada law, unconscionability is a generally a defense to enforcement of a contractual term. Again, because this claim revolves around the Loan Agreement, the Court applies Nevada law. "A contract is unconscionable only when the clauses of that contract and the circumstances existing at the time of the execution of the contract are so one-sided as to oppress or unfairly surprise an innocent party." Bill Stremmel Motors, Inc., v. IDS Leasing Corp., 89 Nev. 414, 418, 514 P.2d 654, 657 (1973). "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." FQ Men's Club, Inc. v. Doe Dancers I, 471 P.3d 753 (Nev. 2020) (citation and quotation omitted). But "procedural and substantive unconscionability operate on a sliding scale, such that 'less evidence of substantive unconscionability is required' where the procedural unconscionability is great." Id. (quoting Burch v. Second Judicial Dist. Court, 118 Nev. 438, 444, 49 P.3d 647, 650 (2002)).

Plaintiffs improperly premise a cause of action for damages on the theory that the limitation on the conversion to a fixed rate is unconscionable. They have not cited any Nevada law that would allow them to seek damages on the theory that a contract provision is unconscionable. Even if they had, they have not alleged sufficient facts to show that this term is both procedurally and substantively unconscionable. There are no cogent allegations that Plaintiffs lacked a meaningful opportunity to obtain the loan without this provision, that they could not have seen or understood the term, or that they could not have sought a longer term for conversion. See Guerra v. Hertz Corp., 504 F.Supp.2d 1014, 1021 (D. Nev. 2007). There are no allegations of procedural unconscionability. And there are insufficient allegations that the

agreement was substantively unconscionable. There does not appear to be anything oppressive or unfair in the limitations placed on the conversion. See Bill Stremmel, 89 Nev. at 418. The Court GRANTS the Motion as to this claim and DISMISSES this claim.

Additionally, the claim itself is untimely. As a species of breach of contract claim, this claim is subject to a six-year statute of limitations. Consistent with the Court's analysis in Section C(3), the claim is time-barred. This is an independent basis on which the Court GRANTS the Motion and DISMISSES this claim WITH PREJUDICE.

**E. Unjust Enrichment**

The FDIC argues that Plaintiffs cannot pursue an unjust enrichment claim under Nevada law because there is an express, written agreement that binds the parties. This is correct.

Because this claim turns on the Loan Agreement, the Court applies Nevada law. "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975, 113 Nev. 747, 755, 942 P.2d 182, 187 (1997). Here, the Loan Agreement is an express, written contract that governs the relationship between the parties concerning the conversion of interest rate from variable to a fixed rate. There can be no claim for unjust enrichment. The same result applies even if the Court were to apply California law, as Plaintiffs suggest. See Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682, 699 (2010) ("An unjust enrichment theory is inapplicable because…the parties entered into express contracts.").

Additionally, any claim of unjust enrichment is untimely. Under Nevada law, Plaintiffs needed to have filed suit within four years of obtaining the loan, while they had to do so within three years under California law. See Nev. Rev. Stat. 11.190(2)(c); FDIC v. Dintino, 167 Cal.

App. 4th 333, 348-50, 84 Cal. Rptr. 3d 38, 52 (2008) (unjust enrichment theory is subject to three-year statute of limitations and accrues when plaintiff knew or should have reasonably discovered facts constituting fraud or mistake). Here, Plaintiffs knew or should have been aware of the unjust enrichment after signing the Loan Agreement, which renders the claims untimely. The Court GRANTS the Motion as to this claim and DISMISSES this claim WITH PREJUDICE.

**F. TILA Claims**

The FDIC seeks dismissal of Plaintiffs' TILA claims on the theory that they are untimely. The Court agrees.

Plaintiffs allege two violations of TILA: 15 U.S.C. § 1635(a) and 15 U.S.C. § 1602(v). (Compl. ¶ 96.) Under § 1635, the lender must deliver notice of a right to rescind. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b). And under § 1602(v), the lender must provide a written disclosure regarding the credit terms, including the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule. 15 U.S.C. § 1602(v).

If the lender fails to provide the notice of the right to rescind, the borrower may exercise the right to rescind within 3 years of the transaction date. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). And all claims for damages are subject to a one-year statute of limitations, though equitable tolling may be applied. 15 U.S.C. § 1640(e); see King v. State of Cal., 784 F.2d 910, 915 (9th Cir. 1986) (holding that equitable tolling may apply in "appropriate circumstances . . . until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action").

Plaintiffs' TILA claims are untimely and there are no grounds to equitably toll the claims. First, the one-year and three-year statute of limitations expired more than a decade before

Plaintiffs filed suit. This renders both TILA claims untimely. And Plaintiffs have failed to allege any grounds to invoke equitable tolling. Plaintiffs had access to the Loan Agreement, which expressly limited the time frame in which they could have converted from a variable to a fixed rate. They allege no plausible allegations as to how they were frustrated in this discovery or any fraudulent concealment. Without citing to the complaint, Plaintiffs argue that there was some "in-person deception of the branch manager." (Resp. at 22.) But there are no specific factual allegations about any such deception specific to these TILA claims. The Court remains unconvinced that these claims can be saved by amendment because the Loan Agreement fully disclosed the term that Plaintiffs now claim is the reason they are entitled to rescission. The Court therefore GRANTS the Motion and DISMISSES the TILA claims WITH PREJUDICE.

**G. Undue Influence**

The FDIC seeks dismissal of Plaintiffs' "undue influence" claim on that theory that no such claim exists under Nevada law. Plaintiffs argue that California law permits such a claim and they have alleged sufficient facts showing that the branch manager deceived them into entering into the loan at issue. The agrees with the FDIC.

Because this claim implicates the Loan Agreement's enforceability, the Court applies Nevada law. Outside of the estate and family law, Nevada does not appear to recognize a claim for undue influence. See In re Est. of Bethurem, 129 Nev. 869, 313 P.3d 237 (2013) (examining a claim of undue influence in a dispute over whether to invalidate a will). Even if such a claim were to exist in the context of a loan transaction, Plaintiffs would need to allege a fiduciary relationship existed between them and the branch manager. See Bethurem, 129 Nev. at 874. Under Nevada law, "[a] fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party." Hoopes v. Hammargren, 102 Nev. 425, 725 P.2d 238, 242

(1986). This may be shown through either a confidential or special relationship. To allege a special relationship, the party must show that (1) "the conditions would cause a reasonable person to impart special confidence" and (2) the trusted party reasonably should have known of that confidence. Mackintosh v. Cal. Fed. Sav. & Loan Ass'n, 113 Nev. 393, 935 P.2d 1154, 1160 (1997) (per curiam). A confidential relationship "may exist although there is no fiduciary relationship; it is particularly likely to exist when there is a family relationship or one of friendship." Perry v. Jordan, 111 Nev. 943, 900 P.2d 335, 338 (1995). And the plaintiffs would need to plead the claim with particularity, as it is a species of fraud subject to Federal Rule of Civil Procedure 9(b). See Bethurem, 129 Nev. at 875.

Even if Plaintiffs could pursue a claim of "undue influence," they have failed to allege any fiduciary relationship between them and the branch manager. There are insufficient allegations of either a special or confidential relationship. That Plaintiffs may have trusted the branch manager does not show that he was a fiduciary. Even if there were sufficient allegations of a fiduciary relationship, Plaintiffs fail to allege with particularity the facts necessary to show any fraudulent act that might satisfy the element of this claim. The Court GRANTS the Motion as to this claim and DISMISSES it.

The Court separately notes that Plaintiffs have failed to identify why California law applies to this claim. Given that the claim arises out of the Loan Agreement, the Court finds that the choice of law provision applies to the claim, making Nevada law applicable. Even if California law applied, the Court finds that the claim is inadequately pleaded. Though Plaintiffs fail to identify the applicable law, California recognizes a claim of undue influence as "a species of constructive fraud" which may entitle the plaintiff to rescission. See O'Neil v. Spillane, 45

Cal. App. 3d 147, 158 119 Cal. Rptr. 245, 253 (Ct. App. 1975). By statute, undue influence results from three scenarios:

> (1) In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;
> (2) In taking an unfair advantage of another's weakness of mind; or
> (3) In taking a grossly oppressive and unfair advantage of another's necessities or distress.

Cal. Civ. Code § 1575. "Undue influence, however, 'cannot be used as a pretext to avoid bad bargains or escape from bargains which refuse to come up to expectations.'" Martinez-Gonzalez v. Elkhorn Packing Co. LLC, 25 F.4th 613, 625 (9th Cir. 2022) (quoting Odorizzi v. Bloomfield Sch. Dist., 246 Cal. App. 2d 123, 132, 54 Cal. Rptr. 533 (1966)). "The doctrine consists of two elements: (1) 'undue susceptibility in the servient person' and (2) 'excessive pressure by the dominating person.'" Id. (quoting Odorizzi, 246 Cal. App. 2d at 132). Here, Plaintiffs have failed to allege sufficient facts to show that the bank manager somehow had apparent authority over Plaintiffs or took unfair advantage. Instead, the complaint only alleges that "Mr. Ticey was advised in the selection of the WaMu Mortgage Plus™ Loan by the Washington Mutual branch manager" and that the manager convinced them through a sales pitch to enter into the loan through which the banker obtained a commission. (Compl. ¶ 28; see id. ¶¶ 37-40.) These allegations are insufficient to show the manager had authority over Plaintiffs or that he exercised an unfair advantage. Rather, they only appear to show that the manager acted as a "mere lender" who did not "excessively control[] or dominate[] the borrower." Pension Tr. Fund for Operating Engineers v. Fed. Ins. Co., 307 F.3d 944, 954-55 (9th Cir. 2002). At root, Plaintiffs' claim is simply that they got a bad bargain, which is not sufficient to state a claim. See Martinez-Gonzalez, 25 F.4th at 625. These allegations are inadequate to state a claim under California law and the Court DISMISSES the claim on this alternative basis.

**H. Slander of Title**

The FDIC correctly points out that Plaintiffs' slander of title claim fails under either Nevada or California law.

To establish a claim for slander of title under Nevada law, a plaintiff must plausibly allege: (1) a statement disparaging another's property rights; (2) falsity; (3) malice, and (4) special damages that consist of either "impairment of the land's vendibility" or expenses sustained in removing the cloud on the plaintiff's title caused by the false statement. Summa Corp. v. Greenspun, 98 Nev. 528, 535, 655 P.2d 513 (1982). To establish slander of title under California law, a plaintiff must similarly show: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal. App. 4th 1040, 1051, 93 Cal. Rptr. 3d 457, 464 (2009), as modified (May 18, 2009). Although this claim implicates the Loan Agreement, it also appears to turn on the Deed of Trust, which specifies that California law applies. Given these two potentially applicable choice of law provisions, the Court considers the claim under both states' laws.

Here, Plaintiffs have failed to allege falsity, which is required under either law. Plaintiffs instead attempt to argue that Mrs. Ticey did not endorse the Deed of Trust because she was not given the Loan Agreement to read before she signed the Deed to Trust. But Plaintiffs do not contest that Mrs. Ticey signed the Deed of Trust and that they obtained the loan consistent with the terms specified in the Loan Agreement. These allegations fail to identify anything false in the Deed of Trust. This is fatal to the claim and the Court finds that it must be dismissed.

Additionally, Plaintiffs' claim is untimely. Under either California or Nevada law, the claim must be brought within 2 or 3 years, respectively, of the recording of the deed. Cal. Code

Civ. P. § 338(g); NRS 11.190(4)(c). The deed here was record in 2007, and Plaintiffs' claim filed in 2022 is untimely. This is separate and independent basis on which the Court dismisses this claim.

The Court GRANTS the Motion as to this claim and DISMISSES it WITH PREJUDICE.

**I. Community Property Claim**

Plaintiffs present a somewhat tortured claim that by failing to deliver proper notices of the Loan Agreement to Mrs. Ticey, the loan constitutes an invalid transmutation of Plaintiffs' community property to Mr. Ticey. *See* California Family Code §§ 850 and 852. This claim cannot proceed.

Plaintiffs have failed to identify a legal basis for their claim that the loan here constitutes an invalid transmutation of property. Neither statute that Plaintiffs cite allow this theory to be invoked against the FDIC. "Transmutation is the term used to describe a conversion of the character of property from separate to community, from community to separate, or from the separate property of one spouse to the separate property of the other spouse, by means of written agreement of the spouses." Kirkland et al., Cal. Family Law Practice and Procedure (2022) ch. 20, § 20.1 (internal quotation marks omitted) (citing California Family Code § 850). A transmutation arises in only one context—when one spouse (or an heir or successor to such spouse) asserts against the other spouse that certain property was transmuted, thereby increasing or limiting the property to be divided through a divorce (or administered through a probate or bankruptcy). See, e.g., In re Marriage of Wozniak, 59 Cal. App. 5th 120, 129-31, 273 Cal. Rptr. 3d 421 (2020).

Here, this principle cannot be invoked to invalidate the Loan Agreement or obtain damages, and Plaintiffs identify no law that would permit this outcome. Any claim for

transmutation would only exist as between the Plaintiffs, not with the FDIC. Even if there was a transmutation of community property, Plaintiffs have shown how the California law they cite would entitle them to the relief they seek—damages and restitution of a portion of the property to Mrs. Ticey. The Court GRANTS the Motion as to this claim and DISMISSES it WITH PREJUDICE.

**J. Improper Surreply**

Plaintiffs have filed a 9-page surreply in which they raise additional arguments in response to the FDIC's reply brief. (Dkt. No. 27.)

The Local Civil Rules allow a surreply only for the purpose of asking the Court to strike portions of a reply brief. See Local Rule Civil 7(g). The party must first file notice of an intent to file a surreply, and the surreply must "be strictly limited to addressing the request to strike." Local Civil Rule 7(g)(1)-(2). As the Rule warns: "extraneous argument or a surreply filed for any other reason will not be considered." Local Civil Rule 7(g)(2). And the brief may not exceed three pages or 1,050 words. Local Civil Rule 7(g)(3).

Plaintiffs' surreply must be stricken. First, the brief is overlength. Second, it contains extraneous argument and does not ask for the Court to strike any portion of the reply. Third, Plaintiffs failed to file a notice of intent before filing the brief. The Court therefore STRIKES the surreply and has not considered it.

**CONCLUSION**

Plaintiffs have failed to state a claim under any of the causes of action that they have identified in their complaint. Accordingly, the Court GRANTS the Motion and DISMISSES the complaint in full. Additionally, the Court finds that leave to amend cannot be granted as to all but the undue influence claim because the claims either do not exist and/or are time-barred and

cannot be saved by amendment. The Court therefore DISMISSES WITH PREJUDCE Plaintiffs' claims for: (1) violations of the Federal Trade Commission Act; (2) breach of contract; (3) unconscionability; (4) unjust enrichment; (5) violations of TILA; (6) slander of title; and (7) violations of California's community property laws. These claims cannot be amended. The Court will allow Plaintiffs to amend their undue influence claim. Plaintiffs are warned that this will require substantial additional, plausible allegations to support the claim consistent with the Court's analysis of the contours of the claim. And to the extent that Plaintiffs have suggested that they wish to amend the complaint with a claim of fraud, the Court will allow such amendment. But Plaintiffs should be aware that any such claim must be pleaded with particularity under Federal Rule of Civil Procedure 9(b), as explained above in Section B. As currently pleaded, the Complaint falls far short of the necessary specificity to support such a claim. Any amended complaint must be filed within 30 days of entry of this Order.

The Court also STRIKES the Surreply, which was improperly filed.

The clerk is ordered to provide copies of this order to Plaintiffs and all counsel.

Dated March 31, 2023.

Marsha J. Pechman
United States Senior District Judge